UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| East End Bus Lines, Inc., | Case No. 8-18-76176-las |
| Montauk Transit Service LLC, | Case No. 8-18-76179-las |
| Montauk Student Transport LLC, | Case No. 8-18-76177-las |
| Montauk Transit LLC, | Case No. 8-18-76716-las |
| East End Bus Service LLC, | Case No. 8-18-76717-las |
| | (Jointly Administered) |

                    Debtors.

-------------------------------------------------------------x

| | |
|---|---|
| Orange County Transit, LLC, as *successor-in-interest* to East End Bus Lines, Inc., | |
| | |
| | Adv. Proc. No. 8-20-08148-las |
|                    Plaintiff, | |
|          v. | |
| | |
| Board of Education of Valley Central School District, | |
| | |
|                    Defendant. | |

-------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT

Plaintiff Orange County Transit, LLC ("Plaintiff" or "Orange County Transit"), as successor-in-interest to debtor East End Bus Lines, Inc. ("East End"), brought this adversary proceeding against defendant Board of Education of Valley Central School District ("Defendant") for breach of contract and declaratory relief. *See generally* Complaint ("Compl.") [Dkt. No. 1]. The Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York, dated August 28, 1986, as amended by Order dated December 5, 2021.

Before the Court is Defendant's motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable to

this adversary proceeding by Bankruptcy Rule 7012(b). The Court has carefully considered the arguments and submissions of the parties in connection with the motion to dismiss. For the following reasons, the Court grants Defendant's motion to dismiss.

BACKGROUND

A.    Facts[1]

In 2016, Valley Central School District ("Valley Central"), along with Wallkill Central School District ("Wallkill Central"), an adjoining school district, cooperatively requested the submission of proposals to furnish student transportation services in the school districts for a five-year period from July 1, 2017 to June 30, 2022. Compl. ¶ 12 [Dkt. No. 1]. East End was one of the bidders. *Id.* ¶ 13. On January 4, 2017, Valley Central and Wallkill Central cooperatively awarded East End transportation contracts for (1) Home-to-School Transportation ("HTS"), (2) Field and Sports Trip Transportation ("FST"), and (3) Summer School, with such transportation contracts being subject to voter approval. *Id.* ¶ 14. On August 13, 2017, the transportation contracts received public approval from voters within both Valley Central and Wallkill Central. *Id.* ¶¶ 15–16. On September 1, 2017, East End entered into transportation contracts (the "Contracts") with Valley Central for a five-year term,[2] and each of the Contracts incorporated the request for proposal and bid specifications (the "Specifications") previously issued by the school districts when soliciting bids. *Id.* ¶¶ 17–18; *see* Compl., Exhibit ("Ex.") A.

In January 2018, East End, Montauk Transit Service LLC ("MTSLLC"), Montauk Student Transport LLLC ("MSTLLC"), Montauk Transit LLC ("MTLLC"), and East End Bus

---

[1] The facts stated are taken from Plaintiff's Complaint, unless otherwise noted and are accepted as true for the purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). References to the allegations in the Complaint should not be construed as a finding of fact by the Court, and the Court makes no such findings.

[2] East End also entered into transportation contracts with Wallkill Central on September 1, 2017. Compl. ¶ 19.

Service LLC ("EEBS") (collectively, the "Debtors"), formed Orange County Transit[3] as part of a contemplated financing transaction. *Id.* ¶¶ 7–8, 21–23. In turn, East End sought approval from Valley Central to assign the Contracts to Orange County Transit, and Valley Central approved the assignment. *Id.* ¶¶ 24–25. The contemplated financing transaction fell through and, as a result, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. *Id.* ¶ 27. Specifically, East End, MTSLLC, and MSTLLC commenced their respective chapter 11 cases by the filing of voluntary petitions under 11 U.S.C. § 301 on September 13, 2018, *Id.* ¶ 7, and MTLLC and EEBS commenced their respective chapter 11 cases by filing voluntary petitions under 11 U.S.C. § 301 on October 5, 2018, *Id.* ¶ 8.

On July 25, 2019, East End entered into a stipulation with Orange County Transit and Orange County Transit Service providing that the revenue generated, and expenses incurred, by the Orange County entities in performing under the Contracts shall be deemed the property and obligations of East End and the other Debtors' estates [Bankr. Dkt. No. 352-3, ¶ 1],[4] and that all profits realized under the Contracts shall be used to fund the Debtors' plan of reorganization *Id.* ¶ 2. The stipulation was approved by Order of the Court dated August 26, 2019. [Bankr. Dkt. No. 392].

About a year later, on September 1, 2020, Plaintiff brought this adversary proceeding against Defendant. *See* Compl. In its Complaint, Plaintiff alleges two causes of action, the first for breach of contract, and the second for declaratory relief as to the parties' respective rights and duties under the Contracts. *Id.* ¶¶ 91–96.

---

[3] The Debtors also formed Orange County Transit Service, LLC ("Orange County Transit Service"). Orange County Transit Service is not a party to this adversary proceeding.

[4] Unless otherwise stated, all docket references to East End's bankruptcy case, Case No. 8-18-76176-las, are cited as "[Bankr. Dkt. No. ___]."

In its first cause of action, Plaintiff alleges that Valley Central breached the Contracts, resulting in Plaintiff having suffered damages in an amount to be determined at trial, but not less than the sum of $1,741,633.27. *Id.* ¶ 92. Plaintiff asserts that, as result of the COVID-19 pandemic, all schools within Valley Central were closed on March 13, 2020 (the "Shutdown"). *Id.* ¶ 36. Plaintiff alleges that, as of the date of the Shutdown, Valley Central owed it $66,091.38 and, despite due demand, Valley Central has failed and refused to pay any part of this amount. *Id.* ¶¶ 37–38. Plaintiff maintains that this amount represents the balance due it under the HTS and FST Contracts arising from services performed before the Shutdown. *Id.* ¶ 37.

Plaintiff further alleges that, notwithstanding the Shutdown, it kept drivers on its payroll and continued to perform numerous ancillary services, other than transportation, purportedly required by the Contracts and Specifications (the "Ancillary Services").[5] *Id.* ¶ 39. Plaintiff asserts that the Ancillary Services include vehicle maintenance, driver compliance, Department of Transportation vehicle maintenance and inspections, hiring, recruiting, and dispatching. *Id.* Plaintiff alleges that, for the period of March 13, 2020 through June 30, 2020, the balance due it under the HTS and FST Contracts totaled $1,675,541.89 and, despite its demand, Valley Central has failed and refused to pay any part of this sum. *Id.* ¶¶ 40–41.

Plaintiff asserts that on July 7, 2020, it served Valley Central with a Notice of Claim pursuant to N.Y. Education Law § 3813, demanding payment in the sum of $1,741,633.27. *Id.* ¶¶ 42–43; *see id.*, Ex. C [Dkt. No. 1-5]. Plaintiff maintains that Valley Central has refused to make any adjustment or remit any payment to Plaintiff for thirty (30) days after presentment of the Notice of Claim. *Id.* ¶ 44.

---

[5] The term "Ancillary Services" is defined by Plaintiff in paragraph 39 of the Complaint. Plaintiff does not allege that this is a defined term under the Contracts.

For its second cause of action, Plaintiff requests that, pursuant to 28 U.S.C. § 2201, the Court declare the respective rights and duties of the parties under the Contracts. *Id.* ¶¶ 93–96. Specifically, Plaintiff asks that the Court declare (1) that the enhanced cleaning services required due to COVID-19 are not part of the base program of the Contracts and constitute a material change to the Contracts; (2) that the change to a four-day school week constitutes a material change to the Contracts; (3) non-reimbursement of deadhead fuel and toll costs incurred by Plaintiff in unusual bus usage situations constitutes a material change to the Contracts; and (4) that Valley Central's refusal to ensure that Plaintiff will receive reasonable compensation in the event of a future shutdown constitutes a material change to the Contracts. *Id.* ¶ 94. Plaintiff further seeks a declaration that, because the foregoing items constitute material changes to the Contracts, Valley Central is required to negotiate compensation due to Plaintiff for each of the items. *Id.*

In support of its request for declaratory relief, Plaintiff states that Specifications §§ 8.12 and 8.13 refer to a base program for the Contracts (the "Base Program"), which reflects the compensation to be paid to Plaintiff for the 2020-2021 school year commencing on September 8, 2020. *Id.* ¶¶ 45–46. Plaintiff asserts that on August 27, 2020, in compliance with Specifications § 8.13, it provided Valley Central with a ten-day notice (the "10-Day Notice") of "changes in operating requirements or vehicle usage that will result in a change in contract compensation." *Id.* ¶ 47; *see id.*, Ex. D [Dkt. No. 1-6]. Plaintiff maintains that it issued the 10-Day Notice in response to Valley Central informing Plaintiff of certain changes to the Base Program it intended to make for the 2020-2021 school year because of the COVID-19 pandemic. *Id.* ¶ 48. Plaintiff asserts that, under the Contracts, in the event of a change to the Base Program, Valley Central is require to negotiate in good faith the amount of increased compensation due to Plaintiff. *Id.* ¶ 49.

Accordingly, Plaintiff seeks declaratory relief premised on Valley Central's proposed changes to the Base Program that Plaintiff alleges (1) are beyond the scope of the Contracts, (2) seek to impose terms that were not contemplated by the parties when they entered into the Contracts, and (3) require Valley Central to negotiate increased compensation due to Plaintiff. *Id.* ¶ 50.

B. Procedural History

As noted above, on September 1, 2020, Plaintiff commenced this adversary proceeding by the filing of a two-count Complaint asserting claims for breach of contract and declaratory relief. Together with the filing of its Complaint, Plaintiff filed a motion for entry of an order (1) shortening the time for Defendant to answer or otherwise respond to the Complaint and (2) expediting completion of discovery. [Dkt. No. ¶ 2]. On September 1, 2020, the Court entered an Order scheduling a telephonic hearing on Plaintiff's motion for September 2, 2020. [Dkt. No. 3]. On September 2, 2020, after the telephonic hearing, the Court entered an Order setting September 18, 2020 as the deadline by which Defendant shall answer or otherwise respond to the Complaint. [Dkt. No. 7]. On September 18, 2020, Defendant filed its motion to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and an accompanying memorandum of law. ("Def.'s Mot."). [Dkt. No. 10]. On October 9, 2020, Plaintiff filed a Memorandum of Law in Opposition to the Motion to Dismiss ("Pl.'s Opp'n"). [Dkt. No. 19]. On October 19, 2020, Defendant filed a Reply Memorandum of Law in Further Support of the Motion to Dismiss ("Def.'s Reply"). [Dkt. No. 23].

In the meantime, during a chapter 11 case management conference held on September 29, 2020, the parties advised the Court of their willingness to have the adversary proceeding assigned to mediation. The Court, therefore, entered an order on October 1, 2020 assigning this matter to mediation. [Dkt. No. 16]. On October 28, 2020, Plaintiff filed a letter with the Court stating that the mediation was not successful. [Dkt. No. 24]. Thereafter, despite neither

party requesting nor receiving permission from the Court to file additional pleadings, Plaintiff filed a Supplemental Affirmation in Opposition to the Motion to Dismiss on November 3, 2020, [Dkt. No. 25], and Plaintiff and Defendant filed four additional unsolicited submissions [Dkt. Nos. 27–30]. Because the Court did not grant permission for the parties to file additional pleadings, the unsolicited submissions will not be considered for the purposes of this motion to dismiss.

On November 10, 2020, the Debtors filed a motion pursuant to 11 U.S.C. § 365(a) to reject the Contracts with Valley Central. [Bankr. Dkt. No. 644]. Valley Central filed a response. [Bankr. Dkt. No. 650]. The Court held a hearing to consider the relief requested in the motion on November 30, 2020 and granted the motion. On December 1, 2020, the Court entered an order pursuant to 11 U.S.C. § 365(a) authorizing the Debtors to reject the Contracts with Valley Central. As discussed below, rejection of the Contracts renders moot Plaintiff's request for declaratory relief as the parties are no longer obligated to perform under the Contracts. The rejection of the Contracts constitutes a breach of the Contracts, *see* 11 U.S.C. § 365(g); *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1661 (2019), and Valley Central may file a claim for damages arising out of the rejection of the Contracts. Any claim for damages will be treated as arising pre-petition and, to the extent allowed, will be an unsecured pre-petition claim. *See* 11 U.S.C. § 365(g). This adversary proceeding, therefore, is now a straightforward breach of contract action and the issue before the Court is whether the Complaint plausibly alleges a breach by Valley Central.

<u>STANDARD OF REVIEW</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2)). A defendant may move to dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which the relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6) a

complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To meet this standard, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (internal citation and quotation marks omitted). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Applying this plausibility standard is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCall v. Chesapeake Energy Corp.*, 817 F. Supp. 2d 307, 312 (S.D.N.Y. 2011) (quoting *Iqbal*, 556 U.S. at 679). Although all well-pleaded factual allegations in the complaint are assumed true for purposes of a motion to dismiss, *see Koch*, 699 F.3d at 145, this principle is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached

to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111 (citations omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). For a court to consider a document external to the complaint as "incorporated by reference," there must be a "clear, definite and substantial reference" to the document in the complaint. *Helprin v. Harcourt*, 277 F. Supp. 327, 330-31 (S.D.N.Y. 2003). "A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner Inc.*, 440 F. App'x. 7, 9 (2d Cir. 2011). Conversely, "[m]ultiple references to, and lengthy quotations from, an outside document have been considered sufficiently substantial to incorporate the document into the complaint by reference." *Allen v. Chanel Inc.*, No. 12 CV 6758(RPP), 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013).

"Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "For a document to be considered integral to the complaint, the plaintiff must 'rel[y] on the terms and effect of a document in drafting the complaint . . . mere notice or possession is not enough.'" *United States ex. rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *Chambers*, 282 F.3d at 153). "And 'even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document,' and it must be clear that 'there exist no material disputed issues of fact regarding the relevance of the document.'" *Id*. (quoting *DiFolco*, 622 F.3d at 111).

A court may also take judicial notice of matters of public record, including documents filed in other court proceedings, when considering a motion to dismiss. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 773–74 (2d Cir. 1991). However, courts may only take judicial notice of documents from other court proceedings "to establish the fact of such litigation and related filings" and "not for the truth of the matters asserted in the other litigation." *Id.* at 774.

<u>DISCUSSION</u>

A.  Breach of Contract

Plaintiff brings a claim for breach of contract under New York law. Plaintiff alleges that Valley Central breached the Contracts by failing to pay the full amount due Plaintiff for services purportedly rendered by Plaintiff under the Contracts during both the pre- and post-Shutdown periods. Defendant argues that Plaintiff's breach of contract claim should be dismissed because Plaintiff has not sufficiently stated a breach of contract. Defendant is correct.

To state a claim for breach of contract under New York law, a plaintiff must allege four elements: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *JJCC Real Estate LLC v. Brooklyn Renaissance, LLC* (*In re Brooklyn Renaissance, LLC*), 556 B.R. 68, 75 (Bankr. E.D.N.Y. 2016) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)); *see also Canzona v. Atanasio*, 989 N.Y.S.2d 44, 47 (2d Dep't 2014). When pleading the elements for a breach of contract claim, a plaintiff must identify "the specific provisions of the contract upon which liability is predicated." *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 33 (S.D.N.Y. 2017) (citing *Sud v. Sud*, 621 N.Y.S.2d 37, 38 (1st Dep't 1995)), *aff'd*, 712 F. App'x 85 (2d Cir. 2018) (summary order). *See also Karmilowicz v.*

*Hartford Fin. Servs. Group*, 11 Civ. 539 (CM)(DCF), 2011 U.S. Dist. LEXIS 77481, at *15 (S.D.N.Y. July 14, 2011); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) ("When pleading these elements, a plaintiff must identify what provision of the contract was breached as a result of the acts at issue."). "Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (citing *Posner v. Minnesota Mining & Mfg. Co.*, 713 F. Supp. 562, 563-64 (E.D.N.Y. 1989)).

"At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract [insofar as they are material to the dispute] are unambiguous." *Callahan v. Global Eagle Entm't, Inc.*, 18-cv-8343 (PKC), 2019 U.S. Dist. LEXIS 90822, at *7 (S.D.N.Y. May 30, 2019); *see also Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016); *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("[I]f a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim."). Thus, as a threshold question, courts consider if the terms of the contract are ambiguous. *Novartis Pharma AG v. Incyte Corp.*, 520 F. Supp. 3d 514, 525 (S.D.N.Y. 2021).

Here, as explained below, the Court cannot answer this threshold question because Plaintiff has not plausibly alleged a breach of contract. The Complaint does not identify which provisions of the Contracts created the contractual obligation of Valley Central that Plaintiff now claims Valley Central has breached. To assess whether there is any ambiguity in the Contracts requires the Court to examine the operative contractual provisions that Valley Central is alleged to have breached. Only then can the Court assess whether the contractual language in play is ambiguous, i.e., whether "the terms of the contact 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person.'" *Law*

*Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)). What matters is what the contract says, not how the parties characterize the operative language. *See, e.g., Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) ("The language of a contract is not made ambiguous simply because the parties urge different interpretations.").

1.  Pre-Shutdown Services

The factual allegations in support of Plaintiff's breach of contract claim for pre-Shutdown services are set forth in paragraphs 36 through 37 of the Complaint. There, Plaintiff alleges that (i) because of the COVID-19 pandemic, all schools within Valley Central were closed on March 13, 2020, i.e., the Shutdown, Compl. ¶ 36, (ii) as of the date of the Shutdown, Valley Central owed it $66,091.38 representing the balance due it under the HTS and FST Contracts arising from services performed before the Shutdown, *Id.* ¶ 37, and (iii) despite due demand, Valley Central has failed and refused to pay any part of this amount. *Id.* ¶38. The Complaint (i) is silent as to what period prior to the Shutdown the services were rendered and which remain unpaid, (ii) does not identify the contractual language in the HTS and FST Contracts under which Plaintiff agreed to provide specified services, and (iii) does not allege that Plaintiff fulfilled all of its obligations under the Contracts for pre-Shutdown services and is not in breach of any contractual provisions. In sum, the Complaint alleges that monies are due for unspecified services rendered for an unspecified period. That falls short of identifying what provision of the HTS and FST Contracts were breached as a result of acts by Valley Central.

Additionally, with respect to the pre-Shutdown services, the Complaint attaches as Exhibit C a Notice of Claim that Plaintiff asserts it served on Valley Central in accordance with N.Y. Education Law ¶ 3813. Compl. ¶ 42. The Notice of Claim is likewise sparse as it

merely states that (i) the nature of the claim is a breach of the HTS and FST Contracts and (ii) Plaintiff's claim for $66,091.38 represents "the balance due under the HTS Contract and the FST Contract arising from services performed by Claimant prior to the closure of schools on March 13, 2020, due to COVID-19, as reflected in the invoices issued by Claimant to Respondents." Compl., Ex. C ¶¶ 2, 4. Plaintiff did not attach the invoices referenced in the Notice of Claim to the Complaint; however, Plaintiff did attach the invoices to its Opposition as Exhibit I. Pl.'s Opp'n 7 [Dkt. No. 19-6]. The Court cannot properly consider these invoices with respect to the motion to dismiss. *See DiFolco*, 622 F.3d at 111 (When considering a motion to dismiss, a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). Since the invoices were neither attached to the Complaint as exhibits nor incorporated by reference in the Complaint, and it cannot be said that the Complaint "relies heavily upon [the invoices'] terms and effect," *Int'l Audiotext Network, Inc.*, 62 F.3d at 72, the invoices must be disregarded for purposes of this motion to dismiss.

Accordingly, Plaintiff has not sufficiently stated a breach of contract claim relating to compensation for pre-Shutdown services provided to Valley Central because the Compliant (1) does not specify what the services were for; (2) does not identify the specific provisions of the Contracts Valley Central breached by failing to pay for the unspecified services; and (3) does not provide any factual allegation to support this claim other than the Notice of Claim, which itself does not identify any specific contractual provisions and, as noted, is as sparse as the allegations in the Complaint. Thus, Defendant's motion to dismiss the breach of contract claim for pre-Shutdown services is granted. However, given that Plaintiff is in possession of the invoices that it claims may support its claim for compensation from Valley Central, and considering the "permissive standard" of Fed. R. Civ. P. 15(a)(2), *see Loreley Fin.*

*(Jersey) No. 3 Ltd. v Wells Fargo Sec., LLC*, 797 F 3d. 160, 190 (2d Cir. 2015), the Court grants Plaintiff leave to amend so long as it may properly do so.

### 2. Post-Shutdown Services

Plaintiff's breach of contract claims for the alleged post-Shutdown services fares no better. The factual allegations in support of Plaintiff's breach of contract claim for post-Shutdown services are set forth in paragraphs 39 through 44 of the Complaint. There, Plaintiff alleges that (i) it maintained its drivers on the payroll and performed numerous ancillary services required by the Contracts and Specifications, (ii) it is owed $1,675,541.89 under the HTS and FST Contracts, (iii) despite demand, Valley Central has failed and refused to pay this sum, and (iii) it served a Notice of Claim (Exhibit C) demanding payment of $1,741,633.27 for both the pre-and post-Shutdown services. Compl. ¶¶ 39-44. The Complaint is silent as to a specific term in the Contracts which potentially obligated Valley Central to pay for such "ancillary services," a term defined by Plaintiff and not alleged by Plaintiff to be a term defined in the Contracts.

The absence of any specific term in the Contracts promising that Valley Central would compensate Plaintiff for its characterization of "ancillary services" did not go unnoticed by Valley Central in its motion to dismiss. Valley Central maintains that, instead of identifying specifically breached contract terms, Plaintiff merely makes a conclusory allegation that it is owed $1,741,633.27[6] because of an unspecified breach of the parties' transportation contract. Def.'s Mot. 4. Plaintiff counters that the Complaint makes express reference to the costs and expenses incurred by Plaintiff because of the Contracts' requirement that it maintain operations to be prepared to begin transporting students upon a moment's notice during the Shutdown period. Pl.'s Opp'n 8. Specifically, Plaintiff argues that it gave a description of the

---

[6] This amount represents the total amount claimed by Plaintiff for both pre-Shutdown services ($66,091.38) and post-Shutdown services ($1,675,541.89).

various Ancillary Services in the Complaint, and, in its Opposition brief, Plaintiff asserts that the Contracts describe the Ancillary Services under the heading "CONTRACTOR'S RESPONSIBILITIES." *Id.* at 9 (citing Specifications § 8.8).

Plaintiff argues that its claim for breach of contract should not be dismissed because it listed the Ancillary Services as opposed to citing to the specific contractual provisions that refer to the Ancillary Services. *Id.* Rather, Plaintiff claims that, "[a]s the party that drafted the Specifications, [Valley Central] knows full well that the references in the Complaint" regarding Ancillary Services are to the contractor's responsibilities set forth in Specifications § 8.8. This argument, however, is unavailing. Plaintiff does not cite any authority to support its position that a description of the Ancillary Services, as opposed to identifying specific provisions in the Specifications that speak to the respective Ancillary Services and the requirement that Valley Stream compensate Plaintiff for such services, is sufficient to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 570.  *See also* Fed. R. Civ. P. 8(a)(2) (pleading must state, "a short and plain statement of the claim showing that the pleader is entitled to relief").

Plaintiff further argues that its claim for breach of contract is based on the Notice of Claim, which is attached to the Complaint as Exhibit C, and Plaintiff asserts that the Notice of Claim identifies the Contracts. Pl.'s Opp'n 7. Notably, the Notice of Claim does not specify what provisions in the Contracts give rise to Plaintiff's damages in the sum of $1,686,710.06[7] for compensation due Plaintiff for services provided to Valley Central during the Shutdown period. Compl., Ex. C ¶ 4(b). The Notice of Claim states that the claim for $1,686,710.06

---

[7] This amount differs from the amount set forth in the Complaint with respect to Plaintiff's claim for post-Shutdown services. The Complaint alleges that the amount due for post-Shutdown services is $1,675,541.89. Compl. ¶ 40. That amount, when added to the claim of $66,091.38 for pre-Shutdown services, Compl. ¶ 37, totals the amount of breach of contract damages sought by Plaintiff, i.e., $1,741,633.27. Compl. ¶¶ 44, 92.

represents "the balance due under the HTS Contract for the period of [the Shutdown] based on the 'Total Anticipated Annual Cost' of the HTS Contract and the number of days HTS services were required to be provided under the HTS Contract, as reflected in the invoices issued by Claimant to Respondents." *Id*. The Notice of Claim neither specifies what provision in the Contracts required Valley Central to compensate Plaintiff for the "Total Anticipated Annual Cost" of the HTS Contract nor specifies which provision gave rise to the "number of days" that HTS services were "required to be provided under the contract." *Id*.

Plaintiff nevertheless argues that its Complaint refers to the 187-day school calendar "incorporated in the detailed routing matrix/schematic set forth in the Specifications." *Id*. (quoting Compl. ¶ 72).[8] As such, Plaintiff asserts that, as with every other provision in the Specifications, "the fee schedules are based on a school calendar of 184 to 187 days." Pl.'s Opp'n 8 (citing Specifications § 6.1.3). Plaintiff maintains that the Specifications provide that, absent an "emergency," Valley Central "has a calendar of 187 days," and that in the case of an "emergency," Valley Central "will operate on 184 or 185 days." Pl.'s Opp'n 8. Accordingly, Plaintiff maintains that it prepared its bid in reliance on the 184 to 187-day transportation calendar "guaranteed" by the Specifications. *Id*. Valley Central disagrees with Plaintiff's interpretation and argues that the language of the Contracts is unambiguous and must be enforced according to its plain terms insofar as: (1) Specifications § 3.2.4.1 states that "[c]harges from the Contractor will be based upon the actual vehicle usage"; (2) Specifications § 6.6 provides that payments shall be made only for "services already rendered" and additionally states that, "[s]uch payments shall be made monthly on the basis of the number of buses required and/or students transported at the service levels required by the

---

[8] Regarding this reference, Plaintiff's claim for breach of contract only repeats and alleges each and every allegation contained in paragraphs "1" through "44," which does not include Plaintiff's reference to the calendar's incorporation into the Specifications. *See* Compl. ¶ 91. Furthermore, all of Plaintiff's references to the 187-day calendar are in paragraphs "71" through "73." *Id*. ¶ 11.

transportation program"; and (3) the fee schedule that is part of the Contracts is based on fixed hourly rates for transporting students. Def.'s Mot. 5; Def.'s Reply 1.

Here, for the post-Shutdown period, each party argues for different interpretations of the contractual provisions, thus giving rise to a dispute over the meaning of the Contracts and the rights and obligations of the parties under the Contracts. However, at the motion to dismiss stage, it's not whether parties disagree on the meaning of a contract. Rather, what the contracts says is the determinative factor. *See Seiden*, 959 F.2d at 428. The Court cannot determine whether the contract terms for "ancillary services" are ambiguous without the Complaint specifying which contract provisions were purportedly breached. As previously stated, "a district court may dismiss a breach of contract claim only if the terms of the contract [insofar as they are material to the dispute] are unambiguous." *Callahan*, 2019 U.S. Dist. LEXIS 90822, at *7 (citation omitted). However, since the Complaint fails to specify the contract provisions that have been breached by Valley Central, the Court cannot determine whether the terms of the Contracts are ambiguous.

Plaintiff's Opposition brief sets forth various contract provisions it claims relate to the Ancillary Services as described in the Complaint. However, such attempted clarification by Plaintiff is improper to consider on the motion to dismiss. *See DiFolco*, 622 F.3d at 111 (When considering a motion to dismiss, a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). Since the specific contract provisions relating to what Plaintiff deems are Ancillary Services requiring Valley Stream to compensate Plaintiff were not identified in the Complaint, the Court cannot consider any clarification or factual allegation raised for the first time in Plaintiff's Opposition brief in deciding the motion to dismiss. "It is well-settled that a plaintiff 'cannot amend [its] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'" *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d

225, 231 (E.D.N.Y. 2015) (*quoting K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting argument raised for first time in opposition to a motion to dismiss the complaint), *cert. denied*, 525 U.S. 1104 (1999); *Thomas v. City of New York*, No. 12-CV-5061 (FB)(SMG), 2013 WL 3810217, at *3 (E.D.N.Y. July 23, 2013).

In sum, New York law and the *Twombly-Iqbal* standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached. *Spinelli v. NFL*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015). Otherwise, the complaint must be dismissed. *See Wolff*, 171 F. Supp. 2d at 358-59. To hold otherwise would allow a breach of contract claimant to paraphrase the substance of allegedly breached contract provisions in a complaint, thereby putting the onus on the defending party to decipher the plaintiff's claim and match the plaintiff's descriptions, however vague they may be, with provisions in the contract that could otherwise be proffered by the claimant.

Accordingly, the Court grants Defendant's motion to dismiss the breach of contract claim for post-Shutdown services on the basis that neither the Complaint nor the Notice of Claim attached as Exhibit C to the Complaint identifies the specific contractual provisions breached by Valley Central and relied upon by Plaintiff in support of its damage claim of $1,675,541.89. However, given that Plaintiff's Opposition brief seeks to provide detail on the contractual provisions allegedly in breach, and considering the "permissive standard" of Fed. R. Civ. P. 15(a)(2), *see Loreley*, 797 F.3d at 190, the Court grants Plaintiff leave to amend so long as it may properly do so.

## B. Declaratory Judgment

Plaintiff's second cause of action seeks a declaratory judgment determining the rights and obligations of the parties under the Contracts for the 2020-2021 school year. Compl. ¶ 94. The parties do not dispute that a notice of claim under N.Y. Education Law § 3813(1)

seeking declaratory relief was not served by Plaintiff upon Defendant. This, Valley Central argues, is fatal to Plaintiff's declaratory judgment action. Def.'s Mot. 6. Plaintiff disagrees contending that a notice of claim is not required with respect to its request for declaratory relief. Pl.'s Opp'n 12-13.

N.Y. Education Law § 3813(1) specifically requires that a written verified notice of claim be served upon the "governing body" of the district or school. N.Y. EDUC. LAW § 3813(1). The failure of a plaintiff to present a timely verified notice of claim upon the school board or its designees is a fatal defect mandating dismissal of the action. *Shands v. Lakeland Cent. Sch. Dist.*, No. 15-CV-4260 (KMK), 2017 WL 1194699, at *9 (S.D.N.Y. Mar. 30, 2017) ("It is well settled in the Second Circuit 'that Education Law § 3813(1) is a statutory condition precedent to a petitioner's bringing of a proceeding against a school district or board of education, and a petitioner's failure to comply is a fatal defect mandating dismissal of the action.'") (quoting *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 366 (W.D.N.Y. 2010)). *See also Tomici v. New York City Dep't of Educ.,* 11-CV-2173, 2012 U.S. Dist. LEXIS 190052, at *26 (E.D.N.Y. Dec. 19, 2012) ("Failure to satisfy Section 3813's requirements is 'fatal' to a claim filed against a school board under state or city law, regardless of whether the claim is brought in state or federal court."); *Lewinter v. New York City Dep't of Educ.*, No. 09 Civ. 0227(PGG), 2010 WL 2746334, at *2 (S.D.N.Y. July 9, 2010); *PBS Bldg. Sys., Inc. v. City of New York*, No. 94 Civ. 3488 (JGK), 1996 WL 583380, at *3 (S.D.N.Y. Oct. 10, 1996) ("The appropriate remedy for failure by the plaintiff to comply with a statutory notice of claim requirement is dismissal of the action, even if the claim is meritorious.").

Here, the parties do not dispute that a notice of claim under N.Y. Education Law § 3813(1) was not served by Plaintiff. The parties do, however, disagree as to whether a notice of claim is a prerequisite to commencement of a declaratory judgment action to determine their respective rights and obligations under the Contracts. For the following reasons, the

Court need not address whether N.Y. Education Law § 3813(1) is applicable to Plaintiff's request for declaratory relief, nor is it necessary for the Court to address the parties' remaining arguments as to the substance of the declaratory judgment action and whether Plaintiff has plausibly alleged a claim sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

As explained above, the Court granted Debtors' motion to reject the Contracts under 11 U.S.C. § 356(a). [Bankr. Dkt. No. 658]. The rejection of the Contracts constitutes a breach of the Contracts, *see* 11 U.S.C. § 365(g); *Tempnology*, 139 S. Ct. at 1661, and Valley Central may file a claim for damages arising out of the rejection of the Contracts. The Debtors may then lodge an objection to the allowance of that rejection damage claim.

Plaintiff's request for a declaratory judgment to determine the parties' respective rights and obligations going forward is rendered moot by its rejection of the Contracts. Under the doctrine of mootness, the requisite controversy must exist throughout the litigation. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997). This doctrine "works to ensure that the case remains live at the time of adjudication." *Robinson v. Blank*, 11 Civ. 2480 (PAC) (DF), 2013 U.S. Dist. LEXIS 72068, at *20 (S.D.N.Y. Feb. 22, 2013). A case is rendered moot when "it is *impossible* for a court to grant *any effectual relief whatever* to the prevailing party." *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1528 (2020) (Alito, J., dissenting) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). Therefore, if the parties have no "legally cognizable interest in the outcome," the court must find that the issue is moot. *Powell v.* McCormack, 395 U.S. 486, 496 (1969); *see also German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 550 (S.D.N.Y. 1995).

Here, Plaintiff requested that the Court declare the respective rights and duties of the parties so that any future controversy may be avoided. Compl. ¶ 94. Since the Contracts were

rejected as of December 1, 2020, there can no longer be any controversy as to the rights of the parties going forward. Whether or not Plaintiff is entitled to an increase in compensation for the 2020-2021 school year is moot. The declaratory judgment action is, therefore, dismissed.

<u>CONCLUSION</u>

For the reasons set forth above, the Court grants Defendant's motion to dismiss the breach of contract claim. However, Plaintiff is granted leave to file an amended complaint, if it can properly do so, for its breach of contract claim to specify which provisions in the Contracts it relies upon in asserting that Valley Central must compensate Plaintiff for services purportedly rendered by Plaintiff both before and after the Shutdown. If Plaintiff chooses to file an amended complaint, it must do so by June 17, 2022. Defendant shall file an answer or otherwise respond to the amended complaint by July 8, 2022.  Additionally, for the reasons set forth above, Plaintiff's request for declaratory relief is dismissed as moot.

So Ordered.



**Dated: May 27, 2022**
**Central Islip, New York**

_Louis A. Scarcella_
**Louis A. Scarcella**
**United States Bankruptcy Judge**